IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  5:15 CR 319 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| RYAN K. SUMLIN, | ) | |
| | ) | MEMORANDUM OPINION |
| Defendants. | ) | AND ORDER |

This matter is before the Court on Defendant, Ryan K. Sumlin's Motion to Suppress Evidence.  (ECF #84).  The Government filed an Opposition to Defendant's Motion.  (ECF #85).  No Reply was filed.  Defendant waived a formal hearing on his Motion, with both parties agreeing that the Court should rule based solely upon the written briefing.  (ECF #86).

**LEGAL STANDARD**

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing, the place to be searched, and the persons or things to be seized.  U.S. Const. Amend IV.        There is no Fourth Amendment

violation when a search is conducted pursuant to a search warrant, issued upon a finding of probable cause which is supported by an affidavit.

A supporting affidavit must show a fair probability, or likelihood that contraband or evidence of a crime will be located on the premises of the proposed search. *Illinois v. Gates*, 462 U.S. 213 (1983); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005); *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016).  The affidavit must point to some "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)(*en banc*).  Reliance on hearsay is entirely proper. *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009).

A review of the sufficiency of the evidence presented in support of a search warrant is limited to the information contained in the four corners of the supporting affidavit. *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009).  The affidavit must be judged based on a totality of the circumstances, using commonsense, and taking into consideration that the they are "normally drafted by nonlawyers in the midst and haste of an on-going criminal investigation. *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004); *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986); *United States v. Brooks*, 594 F.3d 488, 490 (6th Cir. 2010).

A judicial determination of probable cause, once made, "is entitled to 'great deference' and must not reversed in the absence of clear error." *United States v. Calloway*, 116 F.3d 1129, 1132 (6th Cir. 1997)(citation omitted); *see also*, *e.g, United States v. McLevain*, 310 F.3d 434, 439 (6th Cir. 2002).  "[T]he task of the reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the [judicial officer's] decision to issue the warrant." *Massachusetts v. Upton*, 466

U.S. 727, 728 (1984); *see also, e.g.*, *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

Further, even if a search warrant is not supported by probable cause, a reviewing court cannot suppress the evidence uncovered during the search unless it finds that the affidavit was so deficient that the officers executing the warrant were not acting in good faith. *See, United States v. Leon*, 468 U.S. 897 (1984). Except in extraordinary circumstances, the existence of a search warrant issued by a magistrate suffices to show that the executing officer acted in good faith in conducting the search. *United States v. Ross*, 456 U.S. 798, 823, n. 32 (1982); *Leon*, 468 U.S. at 922. "[W]here officers rely in an objectively reasonable fashion on a search warrant issued by a neutral magistrate that is subsequently found to be invalid, the Fourth Amendment exclusionary rule does not require suppression of the fruits of the search." *United States v. Bowling*, 900 F.2d 926, 931 (6th Cir. 1990). The United States Supreme Court has recognized four grounds for finding extraordinary circumstances that could override the good faith presumption. In this case, Mr. Sumlin claims that one of these grounds applies, that being that the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 922-923.

## ANALYSIS

Defendant contends that the search warrant permitting the search of 926 Firestone Boulevard was not supported by probable cause because the affidavit submitted in support of the warrant did not demonstrate a fair probability that evidence of a crime would be located there. (ECF #84). He claims that because the affidavit contained no allegation of illicit activity

occurring at the searched residence, there was no nexus between the property and the sought after evidence.  Defendant cites *United States v. Pinson*, 321 F.3d 558 (6th Cir. 2003), and *United States v. Brown*, 823 F.3d 375 (6th Cir. 2014), for the proposition that without more, a drug dealers place of residence is not searchable based solely on a general expectation that drug dealers tend to keep drugs, money, guns and/or records of transactions at their homes.   In those cases, the court found no nexus between the suspect's residence and the alleged criminal activity. *Id.*  Even under the good faith standard for an officer's execution of a search warrant, which is significantly less demanding that the standard for finding probable cause, the *Brown* court found that the affidavit must still draw on some "plausible connection" between the criminal activity and the residence to be searched.  A connection between the alleged criminal and the residence is not, in and of itself, sufficient to support either standard.  *See, Brown,* 823 F.3d at 385-86.

In this case the affidavit attests to the following facts:

(1) A 2007 Chrysler 300, registered to the Defendant's mother was parked in the driveway of 926 Firestone Boulevard ("the subject property) on multiple days.

(2) The utilities for the subject property are in the name of the Defendant's girlfriend.

(3) There are notes from prior recent police reports, indicating that the Defendant resides at the subject property.

(4) A month prior to the warrant request, the 2007 Chrysler 300, which had been parked at the subject property, was seen, in the morning, at a residence where Carrie Dobbins died of a heroin overdose later that day.

(5) There is evidence indicating that this car was known to be used by the Defendant, that he had previously been arrested while driving that car, and that he was known to be Ms.

Dobbins' heroin dealer.

(6) There were cell phone text communications between the Defendant and Ms. Dobbins' beginning at 6:09 a.m. on the day she died wherein she asked him to come and see her, to bring "35," and to arrive at her house after her mother left in the morning.  There was also a text message sent from Ms. Dobbins to the Defendant telling him to arrive at 6:45 a.m., and "park on the side of the street with the lights off" because "her mother's friend is on the way to the house to pick her mother up."   Ms. Dobbins' mother saw a Chrysler parked on the side street near her home when she was picked up that morning.

(7) The Defendant communicated that he was on his way at 6:14 a.m., within six minutes of receiving Ms. Dobbins' early morning text, and the Chrysler was seen parked near her home some time before 7:00 a.m.

(8) The officer's personal experience shows that individuals involved in drug trafficking use firearms and weapons, keep large quantities of cash, maintain records and documents, and use equipment for the processing and packaging of drugs for sale.

The government agrees that the search warrant affidavit does not mention any evidence of illicit activity related to the current charges, occurring at the searched residence.  However, they contend that there was evidence that Mr. Sumlin resided in the property that was searched.  This fact alone distinguishes the instant case from the facts in *United States v. Pinson*, 321 F.3d 558 (6th Cir. 2003), and undercuts the application of its rationale.  In *Pinson*, the court held that in the absence of any other indicia of criminal activity at the location of the search, "there should be evidence that the trafficker actually owns or resides at the property to be searched."  This criteria is satisfied in Mr. Sumlin's case.  There is, indeed, evidence contained in the affidavit that would

-5-

tend to show that he resides at the subject property.   Therefore, *Pinson*, one of the two cases relied on by the Defendant, does not apply under the circumstances of this case.

As *Pinson* does not support the Defendant's position in this case, the Defendant's entire argument rests on the holding of *United States v. Brown*.  The Defendant's interpretation of *Brown* would require this Court to ignore the Sixth Circuit's long-standing position that "an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking."  *United States v. Williams*, 544 F.3d 683, 687-88 (6th Cir. 2008)(collecting cases).  *Brown* did not, however, overrule *Williams*.  Rather, *Brown* recognized that this inference has been the type of evidence that established the required nexus with an alleged dealer's residence.  *Brown*, at 383.  In its own analysis, *Brown* emphasiz[ed] the fact-intensive nature of the probable cause inquiry" and rejected "rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." *Id.* at 384 (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)).   Although *Brown* found that "as a general matter" the affidavit should "include facts that directly connect the residence with the suspected drug activity," it did not claim that this was a hard and fast rule, or that a "connection" to the residence meant that there must be evidence of illegally drug activity actually taking place at the residence.

In making its own factual determination, based on a totality of the circumstances, the *Brown* court found that Brown's place of residence was not searchable because the affidavit in his case "contained no evidence that Brown distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there" . . . or "that a reliable confidential informant had purchased drugs there, that the police had ever conducted surveillance at Brown's home, or that the recorded drug conversation linked drug trafficking to Brown's

residence." *Brown* at 382-83.  Also missing in the *Brown* case was any evidence that Brown had recently sold drugs, that his car was directly tied to the investigation, that his car had been parked at his residence, or that there were any suspicious communications tying him to the crime being investigated.  The only facts upon which any suspicion was founded were that he was found with two cell phones, and $4813 in cash; his car was at the house of another dealer; the drug dogs alerted on his car, though no drugs were found in the vehicle; and, he had a past conviction for distribution of marijuana, and an acquittal on another drug charge.   There was literally no information in that case that raised an inference that he might have evidence related to the crime being investigated at his residence.

The facts of this case, however, do show a connection between the Defendant's alleged drug activity and the subject property.   The affidavit sets forth facts that would show not only that Mr. Sumlin lived at the subject property, but that the car he used to conduct drug transactions had been seen parked at the subject property.  Further, when Ms. Dobbins contacted him at 6:09 a.m. seeking drugs, he responded that he was on his way within six minutes, and arrived at her property in approximately one half hour to forty-five minutes.  It is likely, or fairly probable, that at 6:09 a.m. he would have been at his residence, and that he would not have had time to leave home, travel to a different location to retrieve drugs, and make it to Ms. Dobbins' home within that time frame.  Under the totality of the circumstances, including the fact that he was Ms. Dobbin's drug dealer, he drove the Chrysler to visit her after she requested drugs the morning of her death, the connection between his car and his residence, the early morning time frame, and the short span of time between receiving the call from Ms. Dobbins' and arriving at her home, there was a sufficient probability or likelihood that at least some evidence of his alleged drug

-7-

trafficking would be found at the subject property.  Therefore, based on *Williams*, and the cases cited therein, and accounting for the factual differences between Mr. Sumlin's affidavit and the *Brown* affidavit, this Court cannot say that the issuing judge committed clear error in finding probable cause to issue the search warrant.

In addition, even if the nexus between the conduct being investigated and Mr. Sumlin's residence was not sufficiently strong to establish probable cause to search, the officers executing the search warrant were entitled to rely on its validity, once it was signed by the issuing judge. *United States v. Ross*, 456 U.S. 798, 823, n. 32 (1982); *Leon*, 468 U.S. at 922.   Therefore, this court cannot suppress the evidence uncovered during the search unless it finds that the affidavit was so deficient that the officers executing the warrant were not acting in good faith.  *See, United States v. Leon*, 468 U.S. 897 (1984); *United States v. Bowling*, 900 F.2d 926, 931 (6th Cir. 1990). Alhtough Mr. Sumlin claims that the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," thereby rendering its execution an act of bad faith, the evidence does not support such a finding.   *Leon*, 468 U.S. at 922-923. As set forth above, based on the evidence that the Defendant was Ms. Dobbin's drug dealer, he drove the Chrysler to visit her after she requested drugs the morning of her death, the connection between his car and his residence, the early morning time frame, and the short span of time between receiving the call from Ms. Dobbins' and arriving at her home, an officer executing the warrant would have no objective reason to doubt its validity.  Therefore, even if the affidavit did not provide a sufficient basis upon which the judge could have found probable cause, neither was it so deficient that a reasonable officer would have reason to believe that the issuance of the warrant was "entirely unreasonable," and doubt the validity of the judge's decision.

## **CONCLUSION**

For all of the reasons set forth above, Mr. Sumlin's Motion to Suppress Evidence is DENIED.  IT IS SO ORDERED.

                                                                      /s/ Donald C. Nugent
                                                                     DONALD C. NUGENT
                                                                     United States District Judge

DATED:   August 29, 2017